BUCHALTER
A Professional Corporation
POOYA E. SOHI (SBN: 241574)
  psohi@buchalter.com
JACK R. SCHARRINGHAUSEN (SBN: 205483)
  jscharringhausen@buchalter.com
KEVIN J. CONNELLY (SBN: 339857)
  kconnelly@buchalter.com
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Telephone: 213.891.0700
Fax: 213.896.0400

Attorneys for Plaintiffs,
HOCB RETAIL LLC and SIRENS DESIGN LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOCB RETAIL LLC, a Nevada limited liability company; and SIRENS DESIGN LLC, a California limited liability company, <br><br> Plaintiffs, <br><br> vs. <br><br> TIA EVANS, an individual; EVANS HR PROS, LLC, a California limited liability company; DON EVANS & ASSOCIATES LLC, a California limited liability company; DANY D. IM a/k/a DANEVA IM, an individual; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 5:25-cv-01632 <br><br> **VERIFIED COMPLAINT FOR:** <br><br> 1) **CIVIL RACKETEERING IN VIOLATION OF 18 U.S.C. § 1962(C);** <br> 2) **CONSPIRACY TO COMMIT CIVIL RACKETEERING IN VIOLATION OF 18 U.S.C. § 1962(D);** <br> 3) **BREACH OF CONTRACT** <br> 4) **MONEY HAD AND RECEIVED;** <br> 5) **CONSTRUCTIVE TRUST;** <br> 6) **CONVERSION;** <br> 7) **BEACH OF FIDUCIARY DUTY;** <br> 8) **FRAUDULENT CONCEALMENT;** <br> 9) **CONSTRUCTIVE FRAUD;** <br> 10) **UNJUST ENRICHMENT;** <br> 11) **VIOLATION OF CAL. PENAL CODE § 496;** <br> 12) **DECLARATORY RELIEF; AND** <br> 13) **INJUNCTIVE RELIEF** <br><br> **JURY TRIAL DEMANDED** |

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

VERIFIED COMPLAINT
BN 90916445v1

Case No. 5:25-cv-01632

Plaintiffs HOCB Retail LLC ("HOCB") and Sirens Design LLC ("Sirens Design") (together, "Plaintiffs"), complain and allege as follows:

## INTRODUCTION

1.      House of CB is the trade name of a women's retail clothing boutique founded in the UK.  House of CB's U.S. brick-and-mortar operations are conducted by HOCB and Sirens Design.

2.      Beginning in approximately 2019, HOCB and Sirens Design retained Defendants Tia Evans and Don Evans & Associates LLC ("Don Evans & Associates") to act as a Human Resources consultant for HOCB and Sirens Design. From 2023 until June 2025, Evans and the other defendants engaged in a brazen scheme to steal over $5 million from Plaintiffs by creating fictitious employees and adding those fictitious employees to store payroll.  In all, Defendants caused over 2,000 fraudulent direct deposits to be issued under phony names to bank accounts controlled by Defendants.

3.      House of CB's management is based in London, England, and accordingly, it was not familiar with U.S. employment laws, regulations, and customs.  Evans represented to HOCB and Sirens Design that her experience would be beneficial to HOCB and Sirens Design, and that she could advise the companies on all aspects of U.S. employment.  After she was retained, Evans represented that it was ordinary and customary for a person in her position to have access to and control over company payroll records.  HOCB and Sirens Design trusted Evans and gave her access to their payroll system.

4.      Having secured Plaintiffs' trust, Evans commenced executing her fraudulent scheme.   Evans created employment records and accounts for fictional employees, utilized her administrative access to the payroll system to manually enter working hours for each of these fictional employees, caused HOCB and Sirens Design's payroll processing company to initiate direct deposits for each of these "employees," and, in an effort to conceal her scheme, deposited the checks

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

VERIFIED COMPLAINT
BN 90916445v1

Case No. 5:25-cv-01632

into multiple bank accounts controlled by Evans, Defendant Evans HR Pros, LLC ("Evans HR Pros"), or other conspirators, including Defendant Dany D. Im.

5.    Over the course of approximately two years, through sham payroll payments, Defendants wrongfully and fraudulently embezzled no less than $5,241,566.94 from Plaintiffs.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action arises, in part, under the Federal Racketeering Influenced and Corrupt Organizations Act ("RICO").

7.    This Court has jurisdiction over Plaintiffs' related state and common law claims pursuant to the doctrine of supplemental jurisdiction under 28 U.S.C. § 1367(a) because they are all part of the same case or controversy.

8.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

9.    Plaintiff HOCB Retail LLC (d/b/a House of CB) is a Nevada limited liability company and women's fashion retailer that operates brick-and-mortar stores in the United States under the trade name House of CB.

10.    Plaintiff Sirens Design LLC is a California limited liability company and women's fashion retailer based in West Hollywood, California. Together with HOCB, Sirens Design LLC operates brick-and-mortar retail stores in California and throughout the United States.

11.    Defendant Tia Evans is an individual and, upon information and belief, resides in the City of Moreno Valley, California.

12.    Plaintiffs are informed and believe, and based thereon allege, that Defendant Evans HR Pros, LLC is a California limited liability company with its principal place of business located in the City of Moreno Valley, California.

1    Plaintiffs are further informed and believe, and based thereon allege, that Evans is

2    the sole member and Chief Executive Officer of Evans HR Pros.

3         13.    Plaintiffs are informed and believe, and based thereon allege, that

4    Defendant Don Evans & Associates LLC is a California limited liability company.

5    Plaintiffs are further informed and believe, and based thereon allege, that Don

6    Evans & Associates is owned by and operated by Evans and her husband, Don

7    Evans.

8         14.    Defendant Dany D. Im a/k/a Daneva Im is an individual and, upon

9    information and belief, resides in the city of Moreno Valley, California.

10        15.    Plaintiffs are informed and believe, and on that basis allege, that at all

11   relevant times, each of the Defendants was, and is, in some manner responsible to

12   Plaintiffs for the embezzlement and theft of millions of dollars, that each Defendant

13   was an aider and abettor, joint tortfeasor, agent, employee, affiliate, and/or

14   representative of other Defendants, in whole or in part, and that each Defendant, in

15   doing the things alleged herein, acted and continues to act within the scope of that

16   agency, representation, and/or employment and with the knowledge and consent of

17   said Defendants.

18        16.    Plaintiffs are informed and believe, and on that basis allege, that

19   Defendants, and each of them, conspired together and willfully formed a deliberate

20   design and purpose, and/or entered into a scheme to, commit the acts and/or

21   omissions herein alleged, and in pursuance thereof, did and/or caused to be done

22   such acts and/or omissions, and that all of said acts and/or omissions were

23   participated in and were done by all of these Defendants, or any one of them, as

24   steps in furtherance of said conspiracy and for the unlawful purposes set forth

25   herein.

26        17.    Plaintiffs are presently unaware of the true names and capacities of the

27   Defendants sued herein as DOES 1 through 10, inclusive, and therefore sue these

28   Defendants by such fictitious names. Plaintiffs will amend this Complaint to allege

these Defendants' true names and capacities when ascertained. Plaintiffs are informed and believe, and on that basis alleges, that each of the fictitiously named Defendants is an aider and abettor, joint tortfeasor, agent, employee, affiliate, and/or representative of other Defendants, and is legally responsible for the unlawful conduct herein alleged.

## ALLEGATIONS COMMON TO ALL CLAIMS

18.    House of CB is a women's fashion retailer based in London, England. The roots of House of CB began in 2009 when Connor Walker – then a teenager – began importing bandage dresses to the UK from overseas and reselling them on eBay.  Originally known as Celeb Boutique, Ms. Walker, relying on a loan of a few thousand pounds from her father, contracted to build her first website in 2010, www.celebboutique.com.  From these humble beginnings, Ms. Walker, using her business acumen, eye for fashion, and ability to recognize an unserved area of the market, built a global fashion brand now known as House of CB.  House of CB operates a global online e-commerce site, www.houseofcb.com, and operates bricks-and-mortar retail stores in the UK, the United States (with several locations in the greater Los Angeles area, including Melrose Avenue), and in Australia.

19.    By any measure, House of CB is an entrepreneurial success story.  Ms. Walker has built her global fashion brand by developing and marketing the concept of "affordable luxury" – i.e., high-quality, fashionable clothing at a reasonable price.  No longer a reseller of clothing, each garment sold by House of CB is designed in its London studios, and the company's sought-after designs have been worn by celebrities such as Beyonce, Lady Gaga, Jennifer Lopez, and the Kardashians.  Within the United States, the House of CB retail stores are operated by two companies:  Plaintiffs HOCB Retail LLC and Sirens Design LLC.

20.    In or around 2019, HOCB and Sirens Design, upon the recommendation of one of their advisors, retained Tia Evans, through her company, Don Evans & Associates (and then later, Evans HR Pros), to help manage their

human resources operations in House of CB's growing U.S. brick-and-mortar retail stores operations.  Because House of CB was founded in London and most of its management team was located in London, House of CB was unfamiliar with U.S. employment rules and regulations.  Evans presented herself as a "one-stop-shop" for House of CB's human resources needs.

21.    In 2019, Plaintiffs and Evans entered into an oral agreement pursuant to the terms of which, Evans, through her company Don Evans & Associates would perform certain human resources services on behalf of HOCB and Sirens Design (the "Agreement").   Under the Agreement, Evans would invoice Sirens Design and HOCB for services rendered, and Plaintiffs would pay the amounts invoiced.

22.    The invoices submitted by Evans directed Plaintiffs to make payments to various bank accounts held in her name, including Bank of America account ending x0002 and x3238 and, as time went on, more frequently directed payments to be made to her company, Evans HR Pros at JPMorgan Chase Bank, N.A., account ending x8730.  True and correct copies of sample invoices submitted by Evans to Plaintiffs are attached as **Exhibits A-C**.

**MAKE CHECK PAYABLE TO: Tia Evans**

**Domestic Wire Payment Options:**
**Account Holder Name: Tia Evans**          **Bank of America**

**Routing Number ████0358**          **Account Number ████x002**

MAKE CHECK PAYABLE TO: Tia Evans          MAKE CHECK PAYABLE TO: Tia Evans

Domestic Wire Payment Options:          Domestic Wire Payment Options:
Account Holder Name: Tia Evans          Account Holder Name: Tia Evans
Routing Number ████0358          Routing Number ████0358
    Account number: ████3238          Account number: ████3238

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES
BN 90916445v1

VERIFIED COMPLAINT          Case No. 5:25-cv-01632

23.     Over time, Evans gained Plaintiffs' trust, and the scope of her services expanded, typically at Evans's own suggestion or request.  In 2024, Plaintiffs paid Evans $225,000 for her "HR consulting services."  Again, because House of CB was inexperienced in U.S. employment matters (and the duties typically performed by Human Resources officers in the United States), House of CB deferred to Evans's expertise.  Beginning in 2022, Evans lobbied to oversee all of Plaintiffs' approximately 25 U.S. retail stores' payroll.

24.     At the time, HOCB and Sirens Design utilized Paychex for its payroll and primarily relied on it for its payroll management services.  Evans, however, represented to Plaintiffs that in the United States, payroll typically fell within the purview of the human resources department.  Relying on Evans's representations, in late 2022 Plaintiffs gave Evans control over their payroll, including administrative access to Plaintiff's Paychex account.

25.     Within the Paychex payroll software, when an employee clocks in for work on the company computer, Paychex automatically calculates the amount of time worked, the amount of wages due to the employee, the appropriate withholding, and, on payday, processes the payroll and initiates the direct deposit into the employee's bank account.  Administrators who have access to the payroll system can, in addition to the automated entries, create manual time entries.  Evans used this functionality within the Paychex software to orchestrate her fraudulent scheme.

26.     Beginning in November 2023, Evans created fictitious employee profiles within the Paychex system, complete with birthdays, Social Security numbers, and bank accounts—which Evans or her co-conspirators controlled—for purposes of receiving direct deposit payments from Plaintiffs.  Once the fictitious employee profiles were setup in the Paychex system, Evans manually entered time entries for the "employees," allowing Evans to collect purported payroll payments on behalf of the fictitious employees.  In order to evade detection of her fraudulent

1    scheme, in many instances, Evans created employees with names similar to existing

2    or former employees, but with a slightly different spelling of their names, e.g.,

3    "Diana Santuago" instead of Diana Santiago.  To be clear, with the exception of

4    Cynthia Evans—Evans' deceased relative—and Defendant Dany Im (neither of

5    whom ever worked for Plaintiffs), the fictitious employees are not real people,

6    much less actual employees of Plaintiffs.

7        27.    Evans created no less than 27 fictitious employees and linked those

8    fake employee profiles to 10 different bank accounts, each of which, upon

9    information and belief, is controlled by Defendants for purposes of receiving direct

10    deposit payments from Plaintiffs.  Remarkably, several of the bank accounts

11    provided for the sham employees are the same accounts to which Evans included in

12    the invoices she submitted to Plaintiffs for payment of her purported HR services,

13    i.e. BofA accounts ending x0002 and x3238 and Chase account ending x8730.  In

14    total, between November 2023 and June 2025, Defendants absconded with more

15    than $5 million in company funds under the guise of purported payroll payments.

16    The following is a summary of the known fictitious employees, the amounts paid

17    thereto, and the associated bank accounts.

| Fictitious Employee Name | Payor | Bank Acct Paid (Last 4 digits) | 2023 Total Losses | 2024 Total Losses | 2025 Total Losses | Total Losses |
|---|---|---|---|---|---|---|
| Cynthia Evans[1] | HOCB | **3238 | $ 9,778.69 | $ 41,855.10 | $ - | $51,633.79 |
| Sonya Ruiz | Siren | **3238 | $ - | $ 93,698.59 | $ 95,855.54 | $189,554.13 |
| Britteny Hafner | Siren | **3238 | $ - | $ - | $ 48,666.80 | $48,666.80 |
| Jaden Hartes | Siren | **3238 | $ - | $ 175,712.77 | $ 43,705.50 | $219,418.27 |
| Jarvan Paul | Siren | **3238 | $ - | $ 126,410.66 | $ 51,753.43 | $178,164.09 |
| Alexedraia Jardine | Siren | **9535 | $ - | $ 128,654.33 | $ 93,242.65 | $221,896.98 |
| Vapic E. Castillo | HOCB | **9535 **8611 | $ - | $ 232,801.18 | $ 69,876.43 | $302,677.61 |
| Vanessa Carter | HOCB | **8611 | $ - | $ - | $ 80,535.48 | $80,535.48 |
| Arneld Courney | HOCB | **8611 | $ - | $ 209,666.68 | $ 58,360.71 | $268,027.39 |

[1] Plaintiffs are informed and believe, and based thereon and allege, that Cynthia Evans is Tia Evans's relative who died in 2022.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

VERIFIED COMPLAINT                                    Case No. 5:25-cv-01632
BN 90916445v1

| Fictitious Employee Name | Payor | Bank Acct Paid (Last 4 digits) | 2023 Total Losses | 2024 Total Losses | 2025 Total Losses | Total Losses |
|---|---|---|---|---|---|---|
| Dany D. Im | HOCB | **8611 **3100 | $          - | $        223,181.09 | $        105.030.36 | $328.211.45 |
| Adrionna Adelle | Siren | **3100 **3254 | $          - | $        142.630.39 | $          48.000.74 | $190,631.13 |
| Samone Randell | HOCB | **3254 | $          - | $        166.895.99 | $        139,266.70 | $306,162.69 |
| Allicia Carilo | HOCB | **3254 | $          - | $        106.792.23 | $        117.052.85 | $223,845.08 |
| Precious Thomaes | HOCB | **3254 **8730 | $          - | $        194.653.84 | $          64.062.54 | $258,716.38 |
| Christane Arcas | Siren | **8730 | $          - | $        132.874.55 | $          72.182.45 | $205,057.00 |
| Stacy Pereza | Siren | **8730 | $          - | $        120.059.32 | $          87.507.81 | $207,567.13 |
| Diana Santuago | HOCB | **8730 **3513 **4539 | $          - | $        303.096.85 | $          75.874.43 | $378,971.28 |
| Naiya Osburne | HOCB | **4539 | $          - | $        182.106.13 | $          99,515.80 | $281,621.93 |
| Anal Humphrey | HOCB | **4539 | $          - | $                     - | $        104,015.28 | $104,015.28 |
| Samuel Nevin | HOCB | **4539 | $          - | $                     - | $        132,844.40 | $132,844.40 |
| Samanta Espiso | Siren | **4539 | $          - | $        142.358.73 | $          53.201.09 | $195,559.82 |
| Arnulfoa Agayoe | Siren | **4539 | $          - | $          77.640.02 | $          51.375.92 | $129,015.94 |
| Daneva Im | Siren | **4539 | $          - | $        324.372.71 | $          23.987.26 | $348,359.97 |
| Mya Jenkans | HOCB | **8404 | $          - | $          74.716.36 | $          70.300.73 | $145,017.09 |
| Nzuankie Campbell | Siren | **0002 | $          - | $          93.481.72 | $          82,485.97 | $175,967.69 |
| Cailee Scott | HOCB |  | $     69,428.14 | $                     - | $                     - | $69,428.14 |
| Grand Total[2] |  |  | $     79,206.83 | $     3,293,659.24 | $     1,868,700.87 | $5,241,566.94 |

28.     From November 2023 through June 2025, Evans, without authority and for her benefit and the benefit of her co-conspirators, created approximately 2,200 fraudulent payroll entries totaling more than $5 million. The last fraudulent payroll transaction was made as recently as June 6, 2025. A true and correct copy of Plaintiffs' payroll statement for the fictitious employees, including the dates and amounts of each payment, is attached hereto as **Exhibit D**.

29.     At the same time that Evans was stealing hundreds of thousands – and ultimately millions – of dollars from Plaintiffs, she was sending regular invoices to Plaintiffs' for the supposed work that she performed, all of which were timely paid

---

[2] These numbers reflect the gross total taken.  In some instances, Evans withheld money for social security or Medicare tax, but in all but a handful of instances for one fictitious employee, she never withheld federal or state income tax.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

VERIFIED COMPLAINT
BN 90916445v1

Case No. 5:25-cv-01632

by Plaintiffs. Although House of CB is continuing to gather its payment records, it received and paid scores, if not hundreds of invoices from Evans since the outset of the relationship. In the ten-month period from March 1 to December 31, 2024 alone, Plaintiffs paid Evans $228,600 for work that she was supposedly performing on behalf of Plaintiffs.

30. Although nearly all of the identities created by Evans were fictitious, at least one of the names is that of a real individual, Defendant Dany D. Im (a/k/a Daneva Im). Upon information and belief, Evans is related to Ms. Im, and the bank account information to which Ms. Im's direct deposits were made (a total of over $676,000) reflect Ms. Im's actual bank account (Bank of America Acct. No. ending in 8611 and Navy Federal Credit Union Acct. No. ending in 3100). Furthermore, several of the fictitious employees' deposits were made to the same bank account as those made to Ms. Im. Two examples of this are set out below:



VERIFIED COMPLAINT

Case No. 5:25-cv-01632

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 90916445v1

31.    At least three of the accounts used for direct deposits as part of Evans's scheme are the same accounts Evans listed on invoices sent to Plaintiffs on behalf of Evans HR Pros (Bank of America Acct. No. ending in 3238; Bank of America Acct. No. ending in 0002; and Chase Acct. No. ending in 8730). Examples of invoices, along with records for the fictitious employees, are below:

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES
BN 90916445v1

*Discovery of the Scheme*

32.    An audit of Plaintiffs' financial statements for 2024 revealed that the companies were operating at a loss.  Knowing that the companies should have achieved strong financial results, in June 2025, HOCB and Sirens Design began an investigation into the reason for the loss, which ultimately revealed Defendants' fraudulent scheme described above.  Thereafter, Plaintiffs removed Evans's access to the Paychex system and ceased making payments for her purported consulting services.  Plaintiffs are informed and believe that this tipped Evans off to the fact that her fraud had been uncovered and Plaintiffs are further informed and believe that Evans is currently taking actions to dissipate or transfer her assets, or otherwise avoid liability.  Plaintiffs are informed and believed, and on that basis allege that, on or about June 15, 2025, Evans put her personal residence up for rent.

## FIRST CLAIM FOR RELIEF

### Civil Racketeering in Violation of 18 U.S.C. § 1962(c)

### (Against All Defendants)

33.    Plaintiffs incorporate by reference and reallege the preceding paragraphs set forth above as if fully contained herein.

34.    Defendants engaged in a fraudulent scheme over the span of over 20 months including over 2,200 fraudulent acts in the form of manual time entries over the internet through Plaintiffs' Paychex platform, causing the distribution of no less than $5,241,566.94 in fraudulent payments to Defendants for hours not worked by fictitious employees created by Evans and sent to accounts held or controlled by Defendants.

35.    As a direct and proximate result of the conduct of Defendants, Plaintiffs, HOCB and Sirens Design, as well as non-parties Paychex and Sirens Design Ltd., have been injured in their businesses and properties, causing Plaintiffs to suffer monetary damages in an amount not less than $5,241,566.94, said damages to be proven at the time trial.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**VERIFIED COMPLAINT**

Case No. 5:25-cv-01632

BN 90916445v1

36.    Because of Defendants' violations of 18 U.S.C. § 1962(c), Defendants are liable to Plaintiffs for three times the damages Plaintiffs have sustained, plus the cost of this suit, including reasonable attorneys' fees.

*RICO Persons*

37.    Each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3) because each Defendant is capable of holding, and does hold, "a legal or beneficial interest in property."

*The RICO Enterprise*

38.    Defendants constitute an association in fact under the meaning of "enterprise" as defined in 18 U.S.C. § 1961(4).  Beginning no later than November 2023, but likely at an earlier time unknown to Plaintiffs, Defendants associated together as an enterprise for the purpose of executing a scheme to defraud Plaintiffs through a pattern of racketeering activity consisting of distinct acts of wire fraud in violation of 18 U.S.C. § 1343, fraud and related activity in connection with identification documents, authentication features, and information in violation of 18 U.S.C. § 1028; fraud and related activity in connection with access devices as defined by 18 U.S.C. § 1029; bank fraud in violation of 18 U.S.C. § 1344, and money laundering in violation of 18 U.S.C. § 1956.

39.    Although the enterprise is an association in fact, and therefore an informal organization, it does have an operating structure.  Evans holds a supervisory role within the organization and plans and directs the affairs of the enterprise.  Evans devised the scheme and participated in the scheme with Defendants Im, Evans HR Pros, Don Evans & Associates, and others currently unknown to Plaintiffs.  The scheme was designed to defraud both HOCB and Sirens Design of money through a series of false and fraudulent transactions whereby Evans would create fictitious employees in the human resources and payroll systems of the two companies, enter fraudulent time into the payroll system reflecting non-existent hours that the fictitious employees had supposedly worked,

13

and then the money would be paid into bank accounts controlled by Evans and the other associates in the enterprise. Evans further participated in the enterprise by: actively concealing and failing to disclose the fraud to Plaintiffs' management; utilizing and causing Evans HR Pros to submit false invoices to Plaintiffs for services not rendered, nor ever rendered, to Plaintiffs but rather for her own personal gain; creating or causing to be created false payroll documents and employment records to further the scheme; forging or utilizing without permission the identity documents (including social security numbers) of other individuals to create the fictitious employees; and using the ill-gotten gains from the fraud of HOCB and Sirens Design for her own personal benefit.

40.    Defendant Dany D. Im a/k/a Daneva Im participated in the scheme along with Defendants Evans, Evans HR Pros, Don Evans & Associates, and others currently unknown to Plaintiffs. Im participated by accepting payment of payroll paid to fictitious employees knowing that she was not entitled to the receipt of the money; failing to disclose the scheme to HOCB or Sirens Design; and using the ill-gotten gains from the fraud of HOCB and Sirens Design for her own personal benefit.

41.    Evan HR Pros participated in the scheme along with Defendants Evans, Im, Don Evans & Associates, and others currently unknown to Plaintiffs. Evans HR Pros participated by submitting false invoices to Plaintiffs for services not rendered, nor ever rendered, to Plaintiffs; creating false invoices and purported work product to further the scheme; receiving stolen money in its bank accounts and distributing that money to other participants in the enterprise; and failing to disclose the scheme to HOCB or Sirens Design.

42.    Don Evans & Associates participated in the scheme along with Defendants Evans, Im, and Evans HR Pros, and others currently unknown to Plaintiffs. Don Evans & Associates participated by presenting to HOCB and Sirens Design that Evans was a legitimate provider of human resources services while

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES
VERIFIED COMPLAINT
BN 90916445v1
Case No. 5:25-cv-01632

knowing, in fact, that Evans was defrauding Plaintiffs; and by failing to disclose the fraud to HOCB or Sirens Design.

43. Each Defendant is employed by or associated with the RICO enterprise, participated in the operation or management of the enterprise, and each of Defendants are individuals or entities that are separate from the enterprise itself.

44. In the alternative, Evans HR Pros is an enterprise within the meaning of 18 U.S.C. § 1961(4) as it is a legal entity separate and apart from the racketeering activity alleged herein as it engages in the provision of human resources services. On or around November 2023, Defendants began using Evans HR Pros to provide a veil of legitimacy to their scheme to defraud and embezzle, presenting the illusion of a legitimate human resources operation. Defendants utilized bank accounts belonging to Evans HR Pros to receive and distribute money stolen from HOCB and Sirens Design, and Evans HR Pros knowingly provided false and fraudulent identification information to financial institutions for the purpose of receiving a fraudulent benefit.

### *The RICO Predicate Acts*

45. Defendants conducted or participated, directly or indirectly, in the conduct, management, or operation of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

### Wire Fraud in Violation of 18 U.S.C. § 1343

46. Beginning on or about November 19, 2023, in furtherance of the purpose of the RICO enterprise, Evans fraudulently used an Internet-accessible computer to enter working hours for a fictitious employee, "Cailee Scott," on Paychex's computerized payroll system for HOCB. The fictitious employee, and no person acting on its behalf, performed work for HOCB, and by entering the false time, Evans developed a scheme to defraud and did defraud HOCB. On or about November 19, 2023, Evans caused Paychex to issue a payroll check in the amount of $1,000.00. The mailing address on the payroll records for Cailee Scott is the

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**VERIFIED COMPLAINT**
BN 90916445v1

Case No. 5:25-cv-01632

same mailing address as Tia Evans.  The foregoing actions by Evans, made in

furtherance of the purpose of the RICO enterprise, constitute a scheme or artifice to

defraud, or a scheme to obtain money by means of false or fraudulent pretenses or

representations, by use of wire communications in interstate commerce, all in

violation of 18 U.S.C. § 1343.

47.    Over the next 20 months, Evans, acting on behalf of the RICO

enterprise, made approximately 2,200 separate and additional false and fraudulent

payroll entries, using additional fictitious names.  In each instance, Evans used an

Internet-accessible computer to make the false and fraudulent entries and to cause

the payroll to issue by direct deposit to an account or accounts controlled by the

enterprise or a participant in the enterprise.  To achieve a common goal of the

enterprise, Defendants knowingly and willfully concealed the false and fraudulent

nature of the time entries.  At a minimum, the total amount of money stolen by

Defendants is $5,241,566.94.  A listing of each of the approximately 2,200 separate

fraudulent transactions, along with their dates of occurrence, are attached hereto as

Exhibit D.  In each instance, these actions constitute a scheme or artifice to defraud,

or a scheme to obtain money by means of false or fraudulent pretenses or

representations, by use of wire communications in interstate commerce, all in

violation of 18 U.S.C. § 1343.

<u>Bank Fraud in Violation of 18 U.S.C. § 1344</u>

48.    Beginning in or around November 2023 and continuing until June

2025, Evans, acting on behalf of the RICO enterprise, made approximately 2,200

separate false and fraudulent payroll entries using fictitious names.  In each

instance, Evans caused Paychex to provide a false name and bank account number

associated with the employee identified in the payment request to HOCB or Sirens

Design's bank for payment of the direct deposit payroll.  A listing of each of the

approximately 2,200 separate fraudulent transactions, along with their dates of

occurrence, are attached hereto as Exhibit D.  In each instance, these actions

constitute a scheme or artifice to defraud a financial institution to obtain money or other property under the custody or control of a financial institution by means of false or fraudulent pretenses or representations, all in violation of 18 U.S.C. § 1344.

Identity Fraud in Violation of 18 U.S.C. § 1028

49.    Beginning in or around November 2023 and continuing until June 2025, Evans, acting on behalf of the RICO enterprise, made approximately 2,200 separate false and fraudulent payroll entries using fictitious names.  In each instance, Evans provided a Social Security number for the fictitious employee, because a Social Security number is required for the Paychex system to issue payroll.  In many of the approximately 2,200 fraudulent transactions, Evans caused HOCB and Sirens Design to withhold Social Security and Medicaid tax using the falsified Social Security number.  A listing of each of the approximately 2,200 separate fraudulent transactions, along with their dates of occurrence, are attached hereto as Exhibit D.  Evans, in furtherance of the RICO enterprise's purpose, knowingly used, without lawful authority, the Social Security numbers of other individuals for the purpose of committing a violation of federal law and for the purpose of committing a felony under the laws of California, all in violation of 18 U.S.C. § 1028(a)(7).

Access Device Fraud in Violation of 18 U.S.C. § 1029

50.    Repeatedly and on numerous occasions throughout 2022 and 2023, Evans and Evans HR Pros represented to Sirens Design and HOCB that a regular function of a human resources executive in the United States was to manage payroll and, accordingly, Evans and Evans HR Pros needed access to Plaintiffs' payroll systems for the purpose of performing work on behalf of Plaintiffs.  These representations were false.  The Paychex payroll computer system is an "access device" as defined by 18 U.S.C. § 1029(e)(1) because it is a means of account access that can be used to obtain money or can be used to initiate a transfer of funds.  Evans's use of the access device; i.e., the Paychex payroll system, was

obtained with intent to defraud and is therefore an unauthorized access device, as defined by 18 U.S.C. § 1029(e)(3). Evans, knowingly and with intent to defraud, used an unauthorized access device on approximately 2,200 separate and distinct occasions to obtain at least $5,241,566.94.  A listing of each of the approximately 2,200 separate fraudulent transactions, along with their dates of occurrence, are attached hereto as Exhibit D.

<u>Money Laundering in Violation of 18 U.S.C. § 1956</u>

51.     Beginning in or around November 2023 and continuing until June 2025, Evans, acting on behalf of the RICO enterprise, made approximately 2,200 separate false and fraudulent payroll entries using fictitious names.  In each instance, Evans caused Paychex to issue payroll and cause a direct deposit of money into an account controlled by Evans, Evans HR Pros, or other participants in the RICO enterprise.  Evans, knowing that the property involved in the financial transactions represented a form of unlawful activity, directed or caused financial transactions that, by using false and fictitious names in the books and records of Paychex, HOCB, and Sirens Design, the financial transaction was designed, in whole or in part, to conceal the nature, location, source, ownership, and control of the proceeds of unlawful activity specified by 18 U.S.C. § 1961, all in violation of 18 U.S.C. § 1956.

<u>Related and Continuous Activity</u>

52.     All of the predicate acts identified above are part of a common purpose on the part of Defendants to enrich themselves by defrauding and stealing from HOCB, Sirens Design, and their sole member, Connor Walker.   Each of the predicate acts, carried out using HOCB and Sirens Design's Paychex payroll system, had the same or similar purposes, results, participants, victims, and methods of commissions.

53.     Defendants' conduct, by its nature, would have continued into the future indefinitely by for Sirens Design and HOCB's discovery of the fraudulent

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

VERIFIED COMPLAINT
BN 90916445v1

Case No. 5:25-cv-01632

scheme and termination of Evans's access to the Paychex payroll system. Indeed, Defendants' fraudulent scheme involved regular, repetitive payments over the course of twenty months, and the last fraudulent transactions occurred just weeks ago on June 6, 2025.

54. Evans HR Pros was organized on or around September 2022, and since that time, has participated in hundreds of fraudulent and unlawful transactions involving HOCB and Sirens Design. Unlawful transactions are a regular means of conducting business for Evans HR Pros, and but for Defendants' discovery of the fraud, Defendants would have continued to employ the underlying fraud against Plaintiffs indefinitely. There is no finite or natural conclusion to Defendants' scheme. Accordingly, Defendants' actions are open-ended in nature, have targeted multiple victims, and constitute or pose a threat of continuation in the future.

55. In the alternative, Defendants engaged in a pattern of close-ended criminal activity extending for a period of approximately 20 months, from November 2023 to June 2025, upon Plaintiffs' discovery of the fraud. The scheme involved over 2,000 separate predicate acts, targeted multiple victims, and various predicate offenses.

56. As a direct and proximate result of one or more of the foregoing predicate acts in violation of RICO, Plaintiffs have been injured in their business or property in an amount not less than $5,241,566.94.

## SECOND CLAIM FOR RELIEF

### Conspiracy to Commit Civil Racketeering -- 18 U.S.C. § 1962(d)

### (Against All Defendants)

57. Plaintiffs incorporate by reference and reallege the preceding paragraphs set forth above as if fully contained herein.

58. Through their conduct alleged in the Complaint, each of Defendants knowingly joined the conspiracy to participate in the conduct of the affairs of the RICO enterprise.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

VERIFIED COMPLAINT

Case No. 5:25-cv-1632

BN 90916445v1

59.    In addition, each of Defendants committed at least one act in furtherance of the conspiracy, and or consented to the commission of acts by others.

60.    Defendants agreed and conspired to commit and carry out the foregoing violations of 18 U.S.C. § 1962(c) set forth in Count One, including some or all of the foregoing alleged predicate acts, and thereby have also violated 18 U.S.C. § 1962(d).

61.    As a direct and proximate result of the foregoing conduct, Plaintiffs have been injured in their business and property, and have sustained actual damages, in an amount not less than $5,241,566.94.

## THIRD CLAIM FOR RELIEF

### Breach of Contract

### (Against Defendants Evans, Don Evans & Associates, and Evans HR Pros)

62.    Plaintiffs incorporate by reference and reallege the preceding paragraphs set forth above as if fully contained herein.

63.    On or about July 14, 2019, Plaintiffs and Evans entered into an oral agreement (the "Agreement") pursuant to which Evans, through her companies Evans & Associates and, later, Evans HR Pros, would provide HR services and oversee Plaintiff's payroll processes to ensure that Plaintiffs' employees were compensated properly for the services performed for Plaintiffs.

64.    The Agreement is a valid and enforceable agreement and Plaintiffs have satisfied all of their obligations under the Agreement, except those obligations that were excused as a result of Defendants' breaches.

65.    Defendants breached the Agreement by, among other things, fraudulently issuing payments to Evans and her co-conspirators via purported payroll payments to fictitious employees.

66.    As a direct and proximate result of Defendant's breach, Plaintiffs have suffered damages in an amount subject to proof at trial, but not less than $5,241,566.94.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES
BN 90916445v1

**VERIFIED COMPLAINT**                                   Case No. 5:25-cv-01632

## FOURTH CLAIM FOR RELIEF

### Money Had and Received

### (Against Defendants All Defendants)

67.    Plaintiffs incorporate by reference and reallege the preceding paragraphs set forth above as if fully contained herein.

68.    Since November 2023, Defendants had and received at least $5,241,566.94 that was intended to be used for the benefit of Plaintiffs.

69.    The money was not used for the benefit of Plaintiffs, but instead, Defendants wrongly used the money for their own personal benefit.

70.    To date, Defendants have not given or returned the money to Plaintiffs.

71.    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages in an amount to be proved at trial, but not less than $5,241,566.94.

## FIFTH CLAIM FOR RELIEF

### Constructive Trust

### (Against All Defendants)

72.    Plaintiffs incorporate by reference and reallege the preceding paragraphs set forth above as if fully contained herein.

73.    As a result of Defendants' theft, fraudulent misrepresentations, and otherwise wrongful conduct as alleged herein, Plaintiffs have suffered damages, including loss of stolen money, attorneys' fees, costs, and expenses. The amount of these damages is known to be at least $5,241,566.94. Plaintiffs' damages continue to accrue.

74.    By reason of the fraudulent and otherwise wrongful manner in which Defendants obtained their alleged right, claim, or interest in and to the bank accounts, funds in any financial institutions, retirement accounts, and all other real and personal property, whether in Defendants' name or transferred to a third party, Defendants have no legal or equitable right, claim, or interest therein. Instead,

Defendants or other third parties are involuntary trustees holding said property and profits therefrom in constructive trust for Plaintiffs with the duty to convey the same to Plaintiffs.

75.    Plaintiffs request this Court declare Defendants to be involuntary trustees of a constructive trust of all real and personal property, including bank accounts, funds in any financial institutions, retirement accounts, and all other such property, that Defendants received as a result of Defendants' conduct alleged herein.

## SIXTH CLAIM FOR RELIEF

### Conversion

### (Against All Defendants)

76.    Plaintiffs incorporate by reference and reallege the preceding paragraphs set forth above as if fully contained herein.

77.    Plaintiffs owned, possessed, or had a right to possess approximately $5,241,566.94 at issue in this matter as these were funds properly obtained and held by Plaintiffs.

78.    The funds are specifically identifiable through records contained in Plaintiffs' Paychex platform and the reports of auditors retained by Plaintiffs.

79.    Defendants substantially interfered with Defendants' funds by knowingly or intentionally taking possession of the funds, which Defendants have not returned to Plaintiffs, by creating false time entries for hours not worked by fictitious employees, causing the funds to be distributed by Defendants when not owed to them by Plaintiffs.

80.    But for Defendants' fraudulent misrepresentations that such time entries were for amounts properly owed to Defendants, Plaintiffs would not have transferred the funds to Defendants.

81.    As a direct and proximate result of Defendants' conversion, Plaintiffs have suffered damages, including loss of stolen money, attorneys' fees, costs, and

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

VERIFIED COMPLAINT

BN 90916445v1

Case No. 5:25-cv-01632

expenses in an amount of no less than $5,241,566.94. Plaintiffs' damages continue to accrue.

82.    Defendants' acts of conversion as alleged above were undertaken with the intent of depriving Plaintiffs of their property or legal rights or otherwise causing injury, and were despicable, malicious, oppressive, and/or fraudulent conduct that subjected Plaintiffs to a cruel and unjust hardship in conscious disregard of Plaintiffs' rights, so as to justify an award of exemplary and punitive damages in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF

### Breach of Fiduciary Duty

### (Against Defendant Tia Evans)

83.    Plaintiffs incorporate by reference and reallege the preceding paragraphs set forth above as if fully contained herein.

84.    Based on her role in overseeing the entirety of Plaintiffs' Human Resources and payroll systems for Plaintiffs' U.S. retail stores, Defendant Tia Evans owed Plaintiffs a fiduciary duty to act with the utmost good faith in the best interest of Plaintiffs.  Evans also owed Plaintiffs a duty of loyalty to not use Plaintiffs' property or confidential information for her own purposes.

85.    Evans violated her relationship of trust and confidence with Plaintiff, breaching her fiduciary duties, and failed to act as a reasonable and careful agent by, among other things:

a.    Creating fictitious employee profiles within Plaintiffs' Paychex system;

b.    Creating false manual time entries within the Paychex system purportedly reflecting hours worked by the fictitious employees; and

c.    Causing or directing Plaintiffs' Paychex platform to issue payroll payments in the name of the fictitious employees, and directing those payments to bank accounts owned or controlled by Evans.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES
BN 90916445v1

VERIFIED COMPLAINT

Case No. 5:25-cv-01632

86.    As a direct, foreseeable, and proximate result of Defendant's breach of fiduciary duties, Plaintiffs have suffered damages, including loss of stolen money, attorneys' fees, costs, and expenses in an amount of least $5,241,566.94. Plaintiffs' damages continue to accrue.

87.    Defendant's breach of fiduciary duties as alleged above was undertaken with the intent of depriving Plaintiffs of their property or legal rights or otherwise causing injury, and were despicable, malicious, oppressive, and/or fraudulent conduct that subjected Plaintiffs to a cruel and unjust hardship in conscious disregard of Plaintiffs' rights, so as to justify an award of exemplary and punitive damages in an amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF

### Fraudulent Concealment

### (Against All Defendants)

88.    Plaintiffs incorporate by reference and reallege the preceding paragraphs set forth above as if fully contained herein.

89.    Plaintiffs are informed and believed, and on that basis allege, that Defendants suppressed or concealed the following material facts, among others:

a.    Creating fictitious employee profiles within Plaintiffs' Paychex system;

b.    Creating false manual time entries within the Paychex system purportedly reflecting hours worked by the fictitious employees;

c.    Causing or directing Plaintiffs' Paychex platform to issue payroll payments in the name of the fictitious employees, and directing those payments to bank accounts owned or controlled by Defendants; and

d.    Concealing and covering up their embezzlement scheme through manipulation and deceit.

90.    Plaintiffs are informed and believe, and on that basis allege, that the suppression or concealment of information herein alleged was undertaken with the

intent to induce Plaintiffs to act in reliance thereon and in the manner herein alleged.

91.    At the time of Defendants' concealment and suppression, Plaintiffs were ignorant of the information concealed or suppressed by Defendants. If Plaintiffs had been aware of the existence of the facts not disclosed by Defendants, Plaintiffs would not have paid Defendants the unearned amounts or allowed Defendants to continue in their employment and/or contractual relationships.

92.    As a direct, foreseeable, and proximate result of Defendants' fraudulent concealment, Plaintiffs have suffered damages, including loss of stolen money, attorneys' fees, costs, and expenses in an amount of at least $5,241,566.94. Plaintiffs' damages continue to accrue.

93.    As Defendants obtained funds from Plaintiffs in the amount of at least $5,241,566.94 through fraudulent means, Defendants owe restitution to Plaintiffs. By fraudulently obtaining said funds, Defendants received a benefit at Plaintiffs' expense, and it would be unjust for Defendants to retain said benefit.

94.    Defendants' fraudulent concealment as alleged above was undertaken with the intent of depriving Plaintiffs of their property or legal rights or otherwise causing injury, and were despicable, malicious, oppressive, and/or fraudulent conduct that subjected Plaintiffs to a cruel and unjust hardship in conscious disregard of Plaintiffs' rights, so as to justify an award of exemplary and punitive damages in an amount to be proven at trial.

## NINTH CLAIM FOR RELIEF

### Constructive Fraud

### (Against Defendant Tia Evans)

95.    Plaintiffs incorporate by reference and reallege the preceding paragraphs set forth above as if fully contained herein.

96.    Defendant Evans owed Plaintiffs fiduciary duties. Specifically, Evans agreed to act as Plaintiffs' consultant and to oversee Plaintiffs' Human Resources

and payroll systems to ensure that Plaintiffs' employees were paid for work performed for Plaintiffs. As such, a confidential relationship existed at all relevant times herein between Plaintiffs and Evans. In that regard, Plaintiffs placed confidence in the fidelity and integrity of Evans in entrusting her with the responsibility to accurately and honestly process Plaintiffs' payroll obligations to employees.

97.    Despite having voluntarily accepted the trust and confidence reposed in her with regard to Plaintiffs' finances, and in violation of this relationship of trust and confidence, Evans abused the trust and confidence of Plaintiff by, among other things:

a.    Creating fictitious employee profiles within Plaintiffs' Paychex system;

b.    Creating false manual time entries within the Paychex system purportedly reflecting hours worked by the fictitious employees;

c.    Causing or directing Plaintiffs' Paychex platform to issue payroll payments in the name of the fictitious employees, and directing those payments to bank accounts owned or controlled by Defendants; and

d.    Concealing and covering up their embezzlement scheme through manipulation and deceit.

98.    Plaintiffs are informed and believe, and on that basis allege, that the suppression or concealment of information herein alleged was undertaken with the intent to induce Plaintiffs to act in reliance thereon and in the manner herein alleged.

99.    At the time of Defendants' concealment and suppression, Plaintiffs were ignorant of the information concealed or suppressed by Defendants. If Plaintiffs had been aware of the existence of the facts not disclosed by Defendants, Plaintiffs would not have paid Defendants the unearned amounts or allowed Defendants to continue in their employment and/or contractual relationships.

**VERIFIED COMPLAINT**                    Case No. 5:25-cv-01632
BN 90916445v1

100.   As a direct, foreseeable, and proximate result of Defendants' constructive fraud, Plaintiffs have suffered damages, including loss of stolen money, attorneys' fees, costs, and expenses in an amount of at least $5,241,566.94. Plaintiffs' damages continue to accrue.

101.   Defendants' constructive fraud as alleged above was undertaken with the intent of depriving Plaintiffs of their property or legal rights or otherwise causing injury, and were despicable, malicious, oppressive, and/or fraudulent conduct that subjected Plaintiffs to a cruel and unjust hardship in conscious disregard of Plaintiffs' rights, so as to justify an award of exemplary and punitive damages in an amount to be proven at trial.

## TENTH CLAIM FOR RELIEF

### Unjust Enrichment

### (Against All Defendants)

102.   Plaintiffs incorporate by reference and reallege the preceding paragraphs set forth above as if fully contained herein.

103.   Through their deceptive acts alleged herein, Defendants caused Plaintiffs to pay at least $5,241,566.94 in unearned compensation to themselves over the course of approximately 20 months in a scheme to defraud Plaintiffs.

104.   As a result of Defendants' wrongful conduct, Defendants have been unjustly enriched at the expense of Plaintiffs and have unjustly retained the benefits of Defendants' wrongful conduct.

105.   As a direct, foreseeable, and proximate result of Defendants' fraud and deceit, Plaintiffs have suffered damages, including loss of stolen money, attorneys' fees, costs, and expenses in an amount of at least $5,241,566.94. Plaintiffs' damages continue to accrue.

106.   Plaintiffs are entitled to a constructive trust and restitution of the amounts wrongfully taken and retained by Defendants at Plaintiffs' expense.

//

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES
BN 90916445v1

VERIFIED COMPLAINT

Case No. 5:25-cv-01632

## ELEVENTH CLAIM FOR RELIEF

### Violation of Cal. Penal Code § 496(c)

### (Against All Defendants)

107.   Through their deceptive acts alleged herein, Defendants violated California Penal Code section 496 by knowingly receiving property that was stolen from Plaintiffs or obtained Plaintiffs' property in a manner constituting theft by fraud.

108.   Specifically, Defendants caused Plaintiffs to make no less than $5,241,566.94 in fraudulent payroll payments to fictitious employees created by Evans as part of the embezzlement scheme.  .

109.   As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages in the amount of no less than $5,241,566.94 plus accrued interest, attorney's fees, and costs in an amount according to proof at trial.

110.   Pursuant to California Penal Code section 496(c), Plaintiffs are entitled to three times the amount of their actual damages in an amount to be proven.

## TWELFTH CLAIM FOR RELIEF

### Declaratory Relief

### (Against All Defendants)

111.   Plaintiffs reallege and incorporate by reference each allegation contained above.

112.   Various controversies exist among the parties including but not limited to whether Plaintiffs are:

a.     Entitled to the proceeds of certain bank accounts held by Defendants;

b.     Entitled to funds in any financial institution held by Defendants;

c.     Entitled to funds in any retirement accounts owned by Defendants;

d.     Entitled to real property owned by Defendants;

e.     Entitled to personal property owned by defendants.

113.   A judicial determination is necessary to ascertain the rights of the

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

parties in connection with the above-pled wrongful embezzlement of Plaintiffs' assets.

### THIRTEENTH CLAIM FOR RELIEF

#### Injunctive Relief

#### (Against All Defendants)

114.   Plaintiffs reallege and incorporate by reference each allegation contained above.

115.   Plaintiffs seek a temporary restraining order and preliminary and permanent injunctive relief freezing Defendants' bank accounts and enjoining Defendants from concealing, using, converting, transferring, or disposing the funds obtained by their wrongful embezzlement of Plaintiffs' assets.

116.   Plaintiffs will further articulate the basis for this injunctive relief in an accompanying motion.

### PRAYER FOR RELIEF

WHEREFORE, in consideration of the foregoing, Plaintiffs seek:

1.     For damages in an amount to be proven at trial;

2.     For recovery of monies wrongfully obtained by Defendants under the guise of payroll wages;

3.     For restitution of the monies wrongfully obtained by Defendants as a result of their wrongful acts in an amount to be proven at trial;

4.     For a declaration that Defendants hold the funds in any bank accounts, financial institutions, and retirement accounts, as well as all other real and personal property of Defendants as constructive trustees for the benefit of Plaintiff;

5.     For disgorgement of all monies belonging to Plaintiffs received from any person arising out of the embezzlement of funds perpetrated by Defendants and all profits earned through the use of those monies;

6.     A temporary restraining order and a preliminary and permanent injunction freezing Defendants' bank accounts and enjoining Defendants from

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**VERIFIED COMPLAINT**

Case No. 5:25-cv-01632

BN 90916445v1

concealing, using, converting, transferring, or disposing the funds obtained from Plaintiffs via unlawful means;

7.    For punitive damages in an amount appropriate to punish Defendant and deter others from engaging in similar conduct;

8.    For interest on the damages according to proof at the legal rate;

9.    For attorneys' fees and cost of suit incurred herein; and

10.    Such other, further, and/or different relief as may be just and proper.

DATED:  June 30, 2025                    BUCHALTER
                                        A Professional Corporation


                                    By:  /s/ *Pooya E. Sohi*
                                        POOYA E. SOHI
                                        JACK R. SCHARRINGHAUSEN
                                        KEVIN CONNELLY
                                        Attorneys for Plaintiffs,
                                        HOCB RETAIL LLC and SIRENS
                                        DESIGN LLC


## JURY DEMAND

Plaintiffs hereby demand a jury trial on all issues so triable.

**VERIFICATION**

I, John Hodgson, have been appointed as an officer and director of Sirens Design Ltd.  I am authorized to make this verification for and on behalf of the Plaintiffs.

I have read the foregoing Verified Complaint and know its contents.  The matters stated in the foregoing Verified Complaint are true to my own knowledge or based on information that I have reviewed from company records that I believe to be truthful and accurate, except as to the matters which are therein stated upon information or belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed at_____, *Monday* this *30* day of *June*, 2025.