BUCHALTER LLP
POOYA E. SOHI (SBN: 241574)
  psohi@buchalter.com
KEVIN J. CONNELLY (SBN: 339857)
  kconnelly@buchalter.com
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Telephone: 213.891.0700
Fax: 213.896.0400

Matthew D. Ridings (admitted *pro hac vice*)
  mridings@beneschlaw.com
Peter J. Sullivan (admitted *pro hac vice*)
  psullivan@beneschlaw.com
Benesch Friedlander Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, OH 44114
Telephone: (216) 363-4512

Attorneys for Plaintiffs,
HOCB RETAIL LLC and SIRENS DESIGN LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOCB RETAIL LLC, a Nevada limited liability company; and SIRENS DESIGN LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>TIA EVANS, an individual; EVANS HR Pros, LLC, a California limited liability company; DON EVANS & ASSOCIATES LLC, a California limited liability company; DANY D. IM a/k/a DANEVA IM, an individual; DONTRAVIAN E. EVANS a/k/a DON EVANS, an individual; and DOES 1through 10, inclusive,<br><br>Defendants. | Case No. 5:25-cv-01632-MWC-SP<br><br>Hon. Michelle Williams Court<br><br>**PLAINTIFFS HOCB RETAIL LLC AND SIRENS DESIGN LLC'S APPLICATION FOR ORDER TO SHOW CAUSE RE CONTEMPT FOR VIOLATING THE COURT'S JULY 22, 2025 INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

**TO ALL PARTIES AND THEIR COUNSEL (IF ANY)**

**PLEASE TAKE NOTICE** that Plaintiffs HOCB Retail LLC and Sirens Design LLC will and do hereby apply to this Court for an Order to Show Cause re why Defendant Tia Evans ("Evans") should not be held in civil contempt for violations of this Court's July 22, 2025 Preliminary Injunction (the "Injunction" or "Order") (Dkt. 35).

Plaintiffs respectfully request that the Court issue an Order:

1. Requiring Evans to appear in person on a date and time set by the Court to show cause why she should not be held in civil contempt for violating the Court's Preliminary Injunction;

2. Finding that Evans has failed to comply with the Court's Orders by, among other things:

   (i)   Failing to provide a complete schedule of assets and liabilities as ordered; and

   (ii)  Converting, dissipating, and disposing of assets in violation of the express prohibitions set forth in the Preliminary Injunction;

3. Ordering coercive civil contempt sanctions, including incarceration if necessary, solely to compel compliance with the Court's Orders, and fully purgeable upon compliance;

4. Ordering Defendant Evans to provide a complete accounting of her assets and liabilities by a date certain and to appear for deposition regarding the location and disposition of assets; and

5. Awarding Plaintiffs their attorneys' fees and costs incurred in connection with this application and any further contempt proceedings.

This Application is made pursuant to the Court's inherent authority, 18 U.S.C. § 401, Federal Rule of Civil Procedure 65, and based on Evans's violation of the Injunction requiring Evans to provide a complete schedule of all of her assets and enjoining Evans from "[c]onverting, selling or otherwise disposing of any assets in

[her] possession, custody, or control without leave of Court." (Dkt. 35 at pp. 3-4). In violation of the Injunction, Evans has failed to provide any information regarding her assets and, following the entry of the Injunction, she has spent tens of thousands of dollars on *17* Carnival cruises, and has booked *11* additional cruises between April and November 2026. Evans has also gambled $14,150.82 in casinos following entry of the Injunction—this is in addition to the more than $1.2 million of the stolen funds she has gambled since 2023.

This application is based upon the First Amended Complaint, this Notice, the accompanying Memorandum of Points and Authorities, the pleadings filed in support of the Temporary Restraining Order and Preliminary Injunction, the Declaration of Pooya E. Sohi and Exhibits filed herewith, the records and files in this action, and upon such further argument and evidence as the Court may consider.

Because of Evans's ongoing violations of the Injunction and her demonstrated refusal to comply absent compulsion, Plaintiffs respectfully request that the Court issue the Order to Show Cause on an expedited basis.

DATED:  April 21, 2026                    BUCHALTER LLP


                                          By:  /s/ *Pooya E. Sohi*
                                               POOYA E. SOHI
                                               KEVIN J. CONNELLY
                                               Attorneys for Plaintiffs,

BUCHALTER LLP
LOS ANGELES

109649923v1                               3

**PLAINTIFFS' APPLICATION FOR OSC RE: CONTEMPT**          Case No. 5:25-cv-01632-MWC-SP

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................6

II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND .............7

    A.  The Litigation History and Preliminary Injunction............................7

    B.  Tia Evans's Willful Defiance of this Court's Injunction ....................9

III. ARGUMENT......................................................................................11

    A.  Legal Standard on Contempt...........................................................11

    B.  Contempt Sanctions Are Warranted. .................................................13

        i.  Evans's Incarceration Is Warranted to Compel Compliance Until Such Time as She has Purged Herself of Contempt and Provides an Accurate Accounting. ..........................................14

        ii. Plaintiffs are Entitled to Monetary Sanctions Including Attorneys' Fees and Costs of Compelling Evans's Compliance.....................................................................................15

IV. CONCLUSION ...................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Eaconomy, LLC v. Auvoria Prime, LLC*,
    482 F. Supp. 3d 1030 (E.D. Cal. 2020) ........................................................... 12

*Gen. Signal Corp. v. Donallco, Inc.*,
    787 F.2d 1376 (9th Cir. 1986) ........................................................................ 13

*Securities and Exchange Commission v. Penfield Co.*,
    157 F.2d 65 (9th Cir. 1946) ............................................................................ 14

*Shell Offshore Inc. v. Greenpeace, Inc.*,
    815 F.3d 623 (9th Cir. 2016) .............................................................. 11, 14, 15

*U.S. v. Powers*,
    629 F.2d 619 (9th Cir. 1980) .......................................................................... 14

*United States v. United Mine Workers*,
    330 U.S. 258 (1947) ........................................................................................ 13

**Federal Statutes**

18 U.S.C.
    § 401 ................................................................................................................ 14
    § 401(3) ........................................................................................................... 11

**Other Authorities**

Fed. R. Civ. P. 8(b)(6) ........................................................................................ 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

From 2023 through June 2025, Tia Evans and her co-conspirators engaged in a scheme to steal over $5 million from Plaintiffs by creating fraudulent entries on the payroll system she controlled on behalf of the Plaintiffs. (Dkt. 35, at p. 2). In July 2025, this Court issued a preliminary injunction prohibiting Tia Evans and the other Defendants[1] from "converting . . . or otherwise disposing of any assets in their possession" and "directly or indirectly incurring charges or cash advances on any credit card, debit card, or checking card." (Dkt. 35, at p. 3). The Court further froze "all monies and assets . . . in all accounts at any bank . . . and other funds and assets held in the name of . . . Defendants." (*Id.*)

Notwithstanding the Court's Preliminary Injunction, Evans has spent tens of thousands of dollars on cruises and gambling since July 2025, living the life of a high roller in open defiance of this Court's order. Since July 2025, Evans has sailed on *seventeen* (17) separate cruises, incurring over $21,000 in onboard expenses alone. From April 2026 until November 2026, Evans is booked on *eleven* (11) additional cruises, which would total *twenty-eight* (28) cruises in a little more than a year. Co-defendant Dontravian Evans – who originally claimed to have no relationship with Tia Evans (Dkt. 46, at p. 1264, First Affirmative Defense) –was Evans's travel companion on many of those voyages. In addition to lavish cruise vacations to the Caribbean and Mexico, Evans has visited casinos in California and Las Vegas in order to gamble thousands of dollars undoubtedly stolen from Plaintiffs.

In addition to prohibiting the disposition of assets, the Court's injunction also required Evans to provide a complete schedule of all her personal assets including all bank accounts, securities, and real or personal property valued in excess of $5,000. (Dkt. 35, at p. 4). Evans has not complied with this Court's order, and she has not

---

[1] At the time that the Court issued its preliminary injunction, Dontravian Evans was not yet a defendant.

made any effort to provide a schedule of her assets. Evans has deliberately flouted this Court's orders. She and those close to her have spent, and continue to spend, money stolen from Plaintiffs to fund a decadent lifestyle of cruises and gambling. It is now clear that Evans has no intention whatsoever of complying with this Court's Orders, and nothing will compel compliance except for a finding of contempt. Furthermore, because of her deliberate refusal to comply with this Court's orders, Plaintiffs respectfully request that this Court issue an order requiring Evans to appear in person and show cause why she should not be held in contempt and issue civil contempt sanctions as the Court deems appropriate, including monetary sanctions and incarceration solely to compel compliance with the Court's Orders, and fully purgeable upon compliance.

Plaintiffs respectfully request that the Court set an OSC hearing on an expedited basis and require Evans's personal appearance.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. The Litigation History and Preliminary Injunction

Plaintiffs incorporate the facts alleged in their First Amended Complaint ("FAC"), which must be considered true for the purposes of this application because Tia Evans chose not to contest them. (Dkt. 46); Fed. R. Civ. P. 8(b)(6). From 2023 through June 2025, Tia Evans and her co-conspirators engaged in a scheme to steal over $5 million from Plaintiffs by creating fraudulent entries on the payroll system she controlled on behalf of the Plaintiffs. FAC, ¶ 2. In total, Tia Evans and her co-conspirators caused over 2,000 fraudulent direct deposits to be issued under phony names to bank accounts controlled by her and other members of the conspiracy. *Id.*

On July 7, 2025, this Court entered a temporary restraining order that, *inter alia*, prohibits Tia Evans from dissipating or transferring any assets. (Dkt. 17). On July 22, 2025, this Court issued a preliminary injunction (Dkt. 35) that, among other things, enjoined the defendants from: (1) converting, selling, or disposing of any assets; (2) transferring, concealing, or disposing of real or personal property obtained

from funds embezzled from the Plaintiffs; (3) directly or indirectly incurring charges or cash advances on any credit card, debit card, or checking card, or incurring any liens or encumbrances on any property; or (4) transferring, selling, encumbering, mortgaging, or encumbering certain identified real property.  (Dkt. 35, at p. 3).  In addition, the Court further froze all money and assets held in the name of or for the benefit of Defendants, including Tia Evans.  *Id.*  Finally, the Court ordered that Defendants prepare a complete schedule of all personal assets and liabilities, including a description of the sources of all assets and liabilities.  Evans did not comply with the Court's orders and has not responded to Plaintiffs' discovery requests.

On September 22, 2025, Plaintiffs filed their First Amended Complaint on all Defendants in this matter.  (Dkt. 46).  On November 11, 2025, Dontravian Evans filed an answer to the First Amended Complaint (Dkt. 59),[2] but no other defendants filed a responsive pleading.  Consequently, on November 13, 2025, Plaintiffs filed their request for entry of default as to Tia Evans, Dany D. Im, Evans HR Pros LLC and Don Evans & Associates LLC, on the grounds that each has failed to appear or otherwise respond to the First Amended Complaint.  (Dkt. 61).  The Clerk entered default as to Tia Evans, Dany D. Im, Evans HR Pros LLC, and Don Evans & Associates LLC on November 14, 2025.  (Dkt. 63).

---

[2] Dontravian Evans's Answer asserted a defense of mistaken identity, claimed that he was never married to Tia Evans, and asserted that it was his son, Nykee Evans, who "dated" Tia Evans and was involved in her scheme. (Dkt 59 at p. 14: 20-28). These statements were false, and after counsel was confronted with the falsity of these statements, they were removed from his amended answer. (Dkt. 64). In fact, Dontravian Evans filed a petition for divorce from Tia Evans in Los Angeles County Superior Court (Case No. 25STFL06937) on July 16, 2025, just *one week* after this Court entered its temporary restraining order against Tia Evans.  In this petition, Mr. Evans represented to the court that he was, in fact, married to Tia Evans. (Sohi Decl., ¶ 3, Ex. 1).  Despite this filing, and despite that Mr. Evans swore, under the penalty of perjury in his divorce petition, that he had been separated from Ms. Evans since November 1, 2021, Dontravian Evans and Tia Evans have continued to sail on cruises with each other – frequently staying in the same cabin – into 2026. In many instances, Mr. Evans has taken financial responsibility for Ms. Evans's folio.

**B.      Tia Evans's Willful Defiance of this Court's Injunction**

Tia Evans has been a prolific cruise passenger.  Records subpoenaed from Carnival Cruise Line show that since January 1, 2023, Evans has sailed on *thirty-nine* separate Carnival cruises.  *See* Declaration of Pooya E. Sohi ("Sohi Decl."), ¶ 5, Ex. 2 at pp. 1-7.  Dontravian Evans has accompanied Evans on all but one of the 39 cruises during the same time period.  *Id.* at pp. 8-13.  According to Carnival's records, the Evanses'[3] total household spend on Carnival sailings during this same period was a whopping $986,049.90 (*Id.* at p. 1):[4]

### Household Revenue

Total onboard Spend
$954,326.30

Total Fare w/o NCF
$31,723.60

Total spend
$986,049.90

Remarkably, the frequency of Evans's cruises has *increased* since the Court entered its preliminary injunction.  From January 1, 2023 to July 2025, Evans sailed on 21 cruises, which is about one cruise every six weeks.  Since July 2025, however, Evans has sailed on ***seventeen*** separate cruises, or approximately one cruise every two weeks.  Sohi Decl., Ex. 2 at pp. 1-7. She is scheduled to depart on yet another cruise on April 18, 2026.  *Id.*   Of the 17 cruises that Evans has taken since July 2025, 11 have been in the Caribbean, meaning that Evans has repeatedly flown back and

---

[3] Tia Evans and Dontravian Evans are both listed as part of the same household in Carnival's records.

[4] Carnival appears to include gambling as part of the onboard spend.  Thus, if $1,000 is charged to the stateroom for purposes of gambling, that counts as "spend" regardless of whether the gambler wins or loses.  Accordingly, the actual amount spent on the cruise line is something less than $986,049.90.

**PLAINTIFFS' APPLICATION FOR OSC RE: CONTEMPT**          Case No. 5:25-cv-01632-MWC-SP

forth from California to Florida, incurring travel costs such as flights and hotels. All in violation of this Court's injunction.

Without action by the Court, Evans will continue to fritter away the money that she has stolen from Plaintiffs. Beginning on April 18, when both she and Dontravian Evans are scheduled to depart from Miami, Florida, on a 5-day Bahamas cruise on the Carnival Sunrise (in which she has booked a suite), she is booked on eleven different cruises between April 18 and November 29, nine of which are suites. These include back-to-back Caribbean cruises (a five-day cruise departing on May 4 and a six-day cruise departing on May 9) and a cross-country stretch of three cruises in less than a month (a six-day cruise to the Mexican Riviera on August 9, a five-day cruise to the Western Caribbean on August 24, and a seven-day cruise to the Eastern Caribbean on August 30). *See* Sohi Decl., Ex. 2 at pp. 1-2.



| Sail Date | Booking # | Ship | Destination | Duration | Cabin # | Type | Cat | OBS | Fare w/o NCFs | Rev Ind | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/29/2026 | QD85M6 | Carnival Panorama | Mexican Riviera | 6 | 7370 | Suite | OS | 0.00 USD | 0.00 USD | Rev | DIRECT | |
| 10/31/2026 | RD05J6 | Mardi Gras | Eastern Caribbean | 7 | 9447 | Suite | OS | 0.00 USD | 0.00 USD | Rev | DIRECT | |
| 10/25/2026 | QF73F2 | Carnival Jubilee | Western Caribbean | 6 | 9420 | Suite | OS | 0.00 USD | 0.00 USD | Rev | DIRECT | |
| 09/14/2026 | NV48G5 | Carnival Glory | Bahamas | 6 | 1019 | Balcony | 8E | 0.00 USD | 0.00 USD | Rev | DIRECT | |
| 08/30/2026 | RD04K9 | Carnival Celebration | Eastern Caribbean | 7 | 9448 | Suite | OS | 0.00 USD | 0.00 USD | Rev | DIRECT | |
| 08/24/2026 | QF72X3 | Carnival Breeze | Western Caribbean | 5 | 7352 | Suite | OS | 0.00 USD | 0.00 USD | Rev | DIRECT | |
| 08/09/2026 | QF72R5 | Carnival Panorama | Mexican Riviera | 6 | 7381 | Suite | OS | 0.00 USD | 0.00 USD | Rev | DIRECT | |
| 06/06/2026 | QJ37M4 | Mardi Gras | Eastern Caribbean | 7 | 9306 | Suite | OS | 0.00 USD | 0.00 USD | Rev | DIRECT | |
| 05/09/2026 | MS04J7 | Carnival Conquest | Western Caribbean | 6 | 7264 | Suite | OS | 0.00 USD | 0.00 USD | Rev | DIRECT | |
| 05/04/2026 | NT47S4 | Carnival Conquest | Eastern Caribbean | 5 | 8401 | Balcony | 8D | 0.00 USD | 0.00 USD | Rev | DIRECT | |

**Cruise Summary** — Only show past cruises

| Sail Date | Booking # | Ship | Destination | Duration | Cabin # | Type | Cat | OBS | Fare w/o NCFs | Rev Ind | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 04/18/2026 | PH12S1 | Carnival Sunrise | Bahamas | 5 | 7238 | Suite | OS | 0.00 USD | 0.00 USD | Rev | DIRECT | |

In addition to cruises, Tia Evans is a frequent gambler, and has gambled over $1 million since 2023, even after entry of this Court's preliminary injunction. On a cruise that departed January 3, 2026, Tia Evans charged $7,300 in gambling expenses

to her stateroom.[5]  *See* Sohi Decl., ¶ 5, Ex. 2 at pp. 15-18.  In Las Vegas, casino records from Resort Worlds, which operates the luxury Conrad and Crockfords hotels, show gambling activity after the preliminary injunction issued.  On one single day – August 3, 2025, less than two weeks after this Court issued the preliminary injunction – Tia Evans spent $9,374.72 on cash buy-ins at the casino.  *Id.,* ¶ 6, Ex. 3 at pp. 9-9.   On July 25, 2025 – three days after the Court entered the preliminary injunction, Tia Evans gambled $4,766.10 at the Park MGM casino in Las Vegas.  *Id.,* ¶ 7, Ex. 4 at MGMRI000048. Since 2023, Evans has gambled $1.3 million at casinos owned by MGM Resorts.  *Id*. There can be no real dispute that the money gambled and spent on cruises is part of the $5 million she embezzled, but that is not relevant for purposes of this Application. Evans was prohibited from dissipating or disposing of her assets and she has, and continues to do exactly that.

## III.   ARGUMENT

### A.   Legal Standard on Contempt.

This Court has the authority—grounded in both statute and common law—to enforce compliance with their orders and ruling through contempt proceedings. Pursuant to 18 U.S.C. § 401(3), "[a] court of the United States shall have power to punish by fine or imprisonment or both, at its discretion, such contempt of its authority, and none other, as . . . (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."  Courts use their civil contempt powers for two separate and independent purposes: "(1) to coerce the defendant into compliance with the court's order; and (2) to compensate the complainant for losses sustained." *Shell Offshore Inc. v. Greenpeace, Inc*., 815 F.3d 623, 629 (9th Cir. 2016).  To establish civil contempt, a plaintiff bears the burden of showing that "(1)[defendant] violated the court order, (2) beyond substantial compliance, (3) not

---

[5] On that trip, notwithstanding Dontravian Evans's claim not to have a relationship with Tia Evans, Dontravian Evans and Tia Evans's expenses were combined on the same folio, which was ultimately settled to Dontravian Evans's credit card.

based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." *Eaconomy, LLC v. Auvoria Prime, LLC*, 482 F. Supp. 3d 1030, 1033 (E.D. Cal. 2020).

Tia Evans has violated the Court's orders in at least two ways. First, the preliminary injunction order required Tia Evans to deliver a "complete schedule of [her] personal assets, including all real and personal property exceeding $5,000 in value, and all bank, securities, and other accounts identified by institution, branch address and account number, as well as all liabilities." (Dkt. 35). Further, "[t]he accounting shall include a description of the sources of all such assets and liabilities." (*Id.*). Evans has failed to comply with this order. The Injunction required Evans to provide this accounting promptly after entry of the Order, yet more than eight months later she has not provided the required accounting and there is no indication that she intends to do so. Instead, it is clear that Evans intends to gamble away the stolen funds as she sails off into the sunset. Plaintiffs will be unable to locate or identify Evans's assets independently without significant time and cost—meanwhile Evans spends lavishly on vacations and gambling. It is also apparent that she has transferred money to an unknown account that is funding her lifestyle.

Second, the preliminary injunction prohibited Evans from "[c]onverting, selling or otherwise disposing of any assets," "[t]ransferring, concealing, or otherwise disposing of personal or real property obtained using the funds embezzled from Plaintiffs," or "directly or indirectly incurring charges or cash advances on any credit card, debit card, or checking card." (*Id.*). Evans's gambling and extravagant VIP cruise vacations are in clear violation of both the letter and intent of the injunction, and without intervention by this Court, Evans, in violation of this Court's orders, will continue to drain away the money that she has plundered from Plaintiffs. The Court's Order was intended to ensure that this money would be preserved to satisfy a judgment at the conclusion of this litigation, and Tia Evans's back-door efforts to avoid compliance with this Court's Order – along with the cooperation of

Defendant Dontravian Evans – demonstrate that Evans has no intention of complying with this Court's Injunction.

Evans has plainly violated the terms of the Order, and she is not in substantial compliance or acting in good faith. Evans's actions – dozens of Caribbean cruises and spending tens of thousands of dollars on casino gambling – is not a mere technical or inadvertent violation of the Order. *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986). Evans's conduct is a knowing, deliberate, and intentional violation of both the letter and the spirit of the Court's injunction. After stealing more than $5 million, Tia Evans and her co-conspirator husband, Dontravian Evans, have thumbed their noses at this Court – Evans by completely ignoring these proceedings and this Court's Orders, and Mr. Evans through his repeated lies and efforts to assist Evans in violating the Orders. Her conduct warrants the issuance of an Order to Show Cause re contempt .

### B.   Contempt Sanctions Are Warranted.

Contempt sanctions are necessary to compel compliance with the Court's Preliminary Injunction. The purpose of imposing sanctions for civil contempt is to coerce the defendant into complying with the court's order and to compensate the movant for any losses sustained. *United States v. United Mine Workers*, 330 U.S. 258, 203-04 (1947). In line with these objectives, Plaintiffs request that the Court exercise its statutory and inherent authority to coerce Tia Evans into complying with its orders by: (1) requiring Evans to appear in person and show cause why she should not be held in contempt and why coercive civil contempt sanctions, including incarceration if necessary, solely to compel compliance with the Court's Orders, should not be issued; (2) ordering Evans to provide a complete accounting of her assets and liabilities by a date certain and to appear for deposition regarding the location and disposition of assets; and (3) awarding Plaintiffs their attorneys' fees and costs incurred in connection with this application and any further contempt proceedings.

It is of paramount importance that Evans's disregard of this Court's orders be remedied and she be prevented from further secreting, diminishing, or otherwise spending the proceeds of her fraudulent scheme as well as any other assets that may be available to satisfy a judgment in this matter. Regrettably, the Court's temporary restraining order and preliminary injunction have had little effect on Evans's conduct. Contempt sanctions are warranted to address Evans's disregard for this Court's Injunction and to compel her compliance.

Plaintiffs respectfully submit that an OSC requiring Evans's personal appearance is the least coercive means likely to secure compliance, with additional sanctions to follow only if she continues to disregard this Court's Orders.

**i.      Evans's Incarceration Is Warranted to Compel Compliance Until Such Time as She has Purged Herself of Contempt and Provides an Accurate Accounting.**

Imprisonment is an appropriate remedy to prevent future violations of the Court's Order. 18 U.S.C. § 401 (authorizing district courts to "punish by fine or imprisonment, or both," a defendant's "[d]isobedience or resistance to [a] lawful . . . order"). Civil contempt is remedial and designed to enforce compliance with a court order. *U.S. v. Powers*, 629 F.2d 619, 627 (9th Cir. 1980); *see also Securities and Exchange Commission v. Penfield Co.*, 157 F.2d 65, 67 (9th Cir. 1946) (remanding to the district court for an order requiring defendant's imprisonment to compel obedience with a court order). The civil contemnor is said to "carry the keys of his own prison in his pocket," meaning they are released when they have purged themselves of their contempt. *Shell*, 815 F.3d at 629.

Here, imprisonment would be appropriate to coerce compliance with this Court's order that Tia Evans provide an accurate accounting of all her personal assets and their location. Additionally, ordering Evans to appear for a deposition on the topic of her finances and assets, including the location of her assets – particularly considering her frequent international travel to the Caribbean, giving her the ability

to secret assets in Caribbean banks – would help Plaintiffs conserve and recover the money stolen by Evans. This would allow Plaintiffs to effectuate recovery and take steps to prevent further diminishment of the proceeds of Evans's fraud.

Evans may purge herself of imprisonment immediately upon (1) providing a complete, verified accounting of her assets and liabilities as required by the Injunction; (2) appearing for a deposition regarding the location, disposition, and control of her assets; and (3) providing a sworn certification that she has not dissipated, transferred, or disposed of any assets in violation of the Court's Orders and will not do so going forward.

### ii. Plaintiffs are Entitled to Monetary Sanctions Including Attorneys' Fees and Costs of Compelling Evans's Compliance.

Plaintiffs also request the Court award its attorneys' fees and costs stemming from this contempt application, including costs of creating and serving subpoenas on Tia Evans's banks, costs of investigating Evans's bank account transactions that violate the Preliminary Injunction, and attorneys' fees for filing this application and attending the hearing.[6] In addition to coercive measures, sanctions for civil contempt may also be imposed to "compensate the complainant for losses sustained," as a result of the contemptuous conduct. *Shell*, 845 F.3d at 629.

## IV. CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request this Court find that Evans has violated this Court's Order and issue an Order to Show Cause re why Evans should not be held in contempt. Plaintiffs further request that the Court, in its discretion, issue sanctions against Evans, including imprisonment until such time that she is in compliance with the Order, require Evans to appear for a deposition regarding her finances, and/or monetary sanctions including attorneys' fees and

---

[6] If this court enters an award of attorneys' fees, counsel will submit an affidavit of fees and costs for this Court's review and approval.

costs, and any additional sanctions this Court deems appropriate under the circumstances.

DATED:  April 21, 2026            BUCHALTER LLP


                                  By:  /s/ *Pooya E. Sohi*
                                       POOYA E. SOHI
                                       KEVIN J. CONNELLY
                                       Attorneys for Plaintiffs,
                                       HOCB RETAIL LLC and
                                       SIREN DESIGNS LLC

BUCHALTER LLP
LOS ANGELES

109649923v1

16

**PLAINTIFFS' APPLICATION FOR OSC RE: CONTEMPT**        Case No. 5:25-cv-01632-MWC-SP

**PROOF OF SERVICE**

*HOCB Retail LLC, et al. v. Tia Evans, et al.*

Case No. 5:25-cv-01632-MWC (SP.x)

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is at BUCHALTER LLP, 1000 Wilshire Boulevard, Suite 1500, Los Angeles, CA  90017-2457.  My email address is slee@buchalter.com.

On the date set forth below, I served the foregoing document described as:

**PLAINTIFFS HOCB RETAIL LLC AND SIRENS DESIGN LLC'S APPLICATION FOR ORDER TO SHOW CAUSE RE CONTEMPT  FOR VIOLATING THE COURT'S JULY 22, 2025 INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

on all other parties and/or their attorney(s) of record to this action by ☒ emailing/faxing and/or ☒ placing a true copy thereof in a sealed envelope as follows:

**SEE ATTACHED SERVICE LIST**

**BY EMAIL**  On April 21, 2026, I caused the above-referenced document(s) to be sent in electronic PDF format as an attachment to an email addressed to the person(s) on whom such document(s) is/are to be served at the email address(es) shown above, as last given by that person(s) or as obtained from an internet website(s) relating to such person(s), and I did not receive an email response upon sending such email indicating that such email was not delivered.

**BY MAIL**    I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service. The address(es) shown above is(are) the same as shown on the envelope.  The envelope was placed for deposit in the United States Postal Service at Buchalter in Los Angeles, California on April 21, 2026.  The envelope was sealed and placed for collection and mailing with first-class prepaid postage on this date following ordinary business practices.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  Executed on April 21, 2026, at Los Angeles, California.

| Shirley Lee | /s/Shirley Lee |
|---|---|
| | (Signature) |

**SERVICE LIST**
*HOCB Retail LLC, et al. v. Tia Evans, et al.*
Case No. 5:25-cv-01632-MWC (SP.x)

Defendant
TIA EVANS, an individual
24956 El Braso Dr.
Moreno Valley, CA 92551

Email:  tiaevans41@yahoo.com;
        suenmai1@yahoo.com

Defendant
DON EVANS & ASSOCIATES LLC,
a California limited liability company
24956 El Braso Dr.
Moreno Valley, CA 92551

Email:  tiaevans41@yahoo.com;
        suenmai1@yahoo.com

Nathan Fransen
Paul J. Molinaro
FRANSEN & MOLINARO, LLP
4160 Temescal Canyon Road
Suite 306
Corona, CA  92883
Email:  nathan@fmattorney.com
        paul@fmattorney.com

Defendant
EVANS HR Pros, LLC, a California
limited liability company
24956 El Braso Dr.
Moreno Valley, CA 92551

Email:  tiaevans41@yahoo.com;
        suenmai1@yahoo.com

Defendant
DANY D. IM a/k/a DANEVA IM
24645 Hudson St.
Moreno Valley, CA 92551

Email:  daneva_636@yahoo.com;
        daneva1012@gmail.com

Attorneys for Defendant
DONTRAVIAN E. EVANS a/k/a DON
EVANS

BUCHALTER LLP
LOS ANGELES

91455698

SERVICE LIST                                                    Case No. 5:25-cv-01632-MWC (SP.x)